UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 14-CV-22902-CIV-WILLIAMS/MONTON

FRANCO SAPONARO DI BABBO, and
All others similarly situated under
29 U.S.C. 216(b),

    Plaintiff,

v.

TECHNO PRINT AND MARKETING CORP.
and HENRY MEDINA,

    Defendants.
_____/

## DEFENDANTS'MOTION FOR ATTORNEY'S FEES AGAINST J.H. ZIDELL, P.A., JAIME H. ZIDELL, ESQ., JULIA M. GARRETT, ESQ., AND ELIZABEH HUEBER, ESQ., WITH INCORPORATED MEMORANDUM OF LAW, AND MOTION FOR SANCTIONS FOR THE FILING AND MAINTAINING OF A FRIVOLOUS LAWSUIT

Defendants, TECHNO PRINT AND MARKETING CORP., and HENRY MEDINA, by and through undersigned counsel, pursuant to 28 U.S.C. § 1927, and the Court's inherent power to control the litigation that comes before it, move this Court for entry of an order awarding attorney's fees and costs against J.H. Zidell, P.A., Jaime H. Zidell, Esq., Julia M. Garrett, Esq., and Elizabeth Hueber, Esq., and sanctions for the filing and maintaining of a frivolous lawsuit, and in support thereof states:

### BACKGROUND

The Plaintiff filed an Amended Complaint on September 9, 2014 alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et. seq.*) for alleged overtime violations and alleged that the FLSA applied to the employer and the employee. [D.E. 11].

The present action was filed against a local print shop and its manager which made less than $500,000 in the past five years combined and which its primary function is to supply printing and marketing supply to local business within Miami. Plaintiff was aware of the evidence, or lack there-of, to prove that there the FLSA applied to this case. Plaintiff failed to take any depositions to even attempt to prove FLSA coverage. This litigation persisted through trial. At the end of the first day of trial, the Honorable Judge Williams asked Plaintiff's counsel how they intended to show that FLSA applied to the facts of this case and asked the Plaintiff to provide case law to support their position. Defendants also asked to provide case law contrary to Plaintiff's position and the same day, Plaintiff and Defendant both provided case law to the court. The trial continued the following day and at the close of Plaintiff's case, the Plaintiff failed to provide the Court with any evidence that met the requirements for individual coverage under the FLSA. As a result of the lack of evidence presented, Defendants moved for a directed verdict from this Court. Notwithstanding the lack of evidence and clearly indistinguishable case law contrary to Plaintiff's position, the Plaintiff asked this Court to continue trial regardless of the ruling on the Motion for Directed Verdict and to further extend the litigation.

Additionally, at the settlement conference and in the days leading up to trial, the plaintiff refused to accept the offers made and chose to continue to litigate its case heavily and vexatiously through trial, knowing very well that they would not be able to establish coverage under the FLSA. Including its attempt to continue litigating, in the event that the Motion for Directed Verdict was granted, to avoid the conclusion of litigation, without offering ANY evidence that Plaintiff actively engaged in interstate commerce as a result of his employment with Defendants.

Instead of admitting that the case was frivolous, the Plaintiff continued to litigate the case heavily and vexatiously multiplied the attorneys' fees without any evidence that there was any individual or enterprise coverage. It is well established that a good-faith investigation should be conducted prior to suing someone. *Ortiz v. D&W Foods, Inc.* 657 F.Supp.2d 1328 (S.D. Fla. 2009). Plaintiff conducted no such investigation prior to filing suit, throughout the litigation and continued to litigate through trial without any proof whatsoever of individual or enterprise coverage. Plaintiff's approach was to force financial pressure on the Defendant, as they have done to several other Corporate-Defendants and as they continue to do on a regular basis. It is apparent, with the number of cases filed by Plaintiff's counsel and their extensive knowledge and skill of handling FLSA cases, they should have known they had no chance of proving their case, yet chose to continue to litigate the case through trial, even attempting to litigate after an adverse ruling against them. Ultimately the Honorable Judge Williams granted the Motion for Involuntary Dismissal as the Plaintiff presented absolutely no evidence whatsoever to establish individual coverage.

The Court should impose a penalty against Plaintiff's counsel to deter them from filing and prosecuting frivolous and baseless claims. If Plaintiff's counsel is not sanctioned, they will continue this behavior, which puts several small businesses out of business, and have zero consequences for doing so. Accordingly, Plaintiff's counsel, specifically Jamie Zidell, should be sanctioned and forced to pay for the Defendants' attorney's fees for its defense of this baseless claim.

## MEMORANDUM OF LAW

**I. IT WAS CLEAR THAT PLAINTIFF COULD NOT ESTABLISH SUBJECT MATTER JURISDICTION UNDER**

## THE FLSA IN THIS CASE, YET CHOSE TO CONTINUE TO LITIAGTE A LOSING CASE

Section 207(a) of the FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA requires an employer to pay overtime at a rate of one and one-half the employee's regular rate for all time worked over 40 hours in a week, as long as the employee is engaged in commerce or in the production of goods for commerce. *Id.* The FLSA overtime provisions apply in two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce – individual coverage; or (2) where an employee works for an enterprise engaged in commerce or in the production of goods for commerce – enterprise coverage. *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003). "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 121 (1946) and *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90 (1942)). This is because the burden of proof on a challenge to subject-matter jurisdiction lies with the party invoking the court's jurisdiction: here, the Plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists").

On August 6, 2014, Plaintiff filed this lawsuit asserting subject matter jurisdiction pursuant to both enterprise and individual coverage pursuant to the FLSA. [D.E. 1]. Plaintiff abandoned its "enterprise coverage" claim in the middle of the trial and attempted to establish jurisdiction under the first type of FLSA coverage – "individual coverage" – which states that an employee is entitled to time-and-a-half overtime pay as long as he or she is "engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. § 207; *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312 (S.D. Fla. 2008). To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee and not on the business of the employer. *See Mitchell v. Lublin McGaughy & Assocs.*, 358 U.S. 207, 211 (1959); *see also Thorne v. All Restoration Servs. Inc.*, 448 F.3d 1264, 1267-68 (11th Cir. 2006). In *Thorne*, the Eleventh Circuit held that it was "the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce," and thus an employee must be "engaged in commerce," which means they must be directly participating in the actual movement of persons or things in interstate commerce, "[f]or an employee to be engaged in commerce." *Kitchings*, 393 F.Supp.2d at 1293 n.26 (quoting *Bokemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp.2d 280, 287 (S.D. N.Y. 2000) and (citing *Walling v. Jacksonville Paper Co.*, 317 U.S.564, 572 (1943)).

While Plaintiff abandoned its claim under enterprise, it maintained and litigated its claim pursuant to individual coverage. However, Plaintiff and his counsel should have known that the Plaintiff's activities while employed by the Defendant did not constitute interstate commerce as Plaintiff did not move persons or things in interstate commerce. Plaintiff was also aware that the evidence they used at trial would not establish coverage pursuant to the FLSA. Instead, Plaintiff and his counsel maintained that Plaintiff's use of the instrumentalities of interstate commerce for

his employment was enough to trigger the individual coverage under the FLSA. In actuality any business conducted by Plaintiff or Defendant during the time of Plaintiff's employment was performed locally and did not actively involve goods or services that would cross state lines. Additionally, Plaintiff was involved solely in the graphic design of the materials and was not directly involved with the sale of any goods. In fact, none of the evidence used at the trial of ads which were solely designed by the plaintiff, even left Miami-Dade County. As such, Plaintiff or Plaintiff's counsel should have known the evidence they possessed did not meet the requisite jurisdictional grounds to support the fundamental FLSA requirements.

**APPLICABLE LEGAL STANDARD FOR DETERMINING ATTORNEY'S FEE AWARDS**

Defendants seek an award of attorney's fees against Plaintiff, Plaintiff's counsel, and the law firm involved.

A.  **Recovery of Fees Against Plaintiff's Counsel**

The Court may award fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. Title 28 U.S.C. § 1927 states as follows:

> An attorney ... who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

An attorney multiplies the proceedings unreasonably and vexatiously when that attorney brings an action that is frivolous or when the attorneys knew or should have known the action was frivolous. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003); *Murray v. Playmaker Servs., L.L.C.*, 548 F. Supp. 2d 1378, (S.D. Fla. 2008) (assessing fees and finding that there was bad faith because the plaintiff's lawyer filed and prosecuted claims that lacked any plausible legal or factual support). An attorney should be charged with objectively assessing

whether her client has a claim (or defense) and if a claim is frivolous but prosecuted, as in this case, sanctions should lie, because prosecuting a case that is not "worth prosecuting in the first place" is "unreasonable and vexatious to the judicial process and tantamount to bad faith." *Torres*, 264 F. Supp. 2d at 1055. In fact, it has been held to be reversible error to fail to award fees, when a frivolous lawsuit has been filed. *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 643 (7th Cir. 2001); *Riddle & Assoc. v. Kelly*, 414 F.3d 832 (7th Cir. 2005).

In this case, from the outset, Plaintiff's counsel is charged with having knowledge of *Thorne*, as a practitioner in this area. Therefore in speaking with his client, Plaintiff's counsel should have known immediately that this is not a case in which coverage existed under the FLSA. Knowing (from speaking to the client) that Plaintiff's duties consisted of creating graphics for local clients should have also alerted Plaintiff's counsel not to file this suit, and then not maintain it once it was filed. Unfortunately, despite the fact that Plaintiff's counsel should have known FLSA coverage did not exist in this case, the matter was litigated through a full trial.

Had Plaintiff's counsel simply discussed the facts of the case with the client, they certainly would have known that this was not a case that should have been litigated. The failure to have such a discussion was reckless, which requires that fees under § 1927 be awarded. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987). Or, if Plaintiff's counsel did have that discussion with the Plaintiff, then Plaintiff's counsel continued to litigate the case even though they knew it was devoid of merit. The fact that every step of the way Plaintiff's counsel employed litigation tactics that had the effect of significantly increasing the costs of this litigation further warrants fees. Fees are properly assessed against the plaintiff if the case is "frivolous, unreasonable, without foundation, *or that the plaintiff continued to litigate after it clearly became so.*" *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (emphasis

added). Courts do, and in fact are required to, exercise their power to award attorneys' fees when suits are filed and/or maintained that are unreasonable and without foundation, like the instant case. *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645 (7th Cir. 2001); *Riddle & Assoc. v. Kelly*, 414 F.3d 832 (7th Cir. 2005). Accordingly, the Defendants request that the Court award their attorneys' fees in this case against Plaintiff's counsel.

Furthermore, Plaintiff's counsel is operating under a file-suit-first-ask-questions-later policy. Previously, in a case with similar circumstances and the same firm, Plaintiff's counsel had been sanctioned for filing and maintaining frivolous lawsuits pursuant to the FLSA. *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168 (S.D. Fla. 2012) (holding that sanctions in the form of attorney's fees were warranted because maintaining the lawsuit after counsel knew coverage under the FLSA did not exist was frivolous). As in *Rodriguez*, Plaintiff's counsel should have known the evidence they possessed did not meet the requisite jurisdictional grounds to support the fundamental FLSA requirements long before reaching trial. *Rodriguez*, 863 F. Supp. 2d at 1185. A firm having previous experience in this field of litigation, and who has previously been sanctioned for similar actions, should abandon that form of practice knowing it is improper. Due to the firm's previous experience in the field, and previous experience with sanctions for maintaining frivolous suits, an award of Defendant's attorney's fees would be proper.

### B. Recover of Fees Against Plaintiffs

Attorney's fees are properly awarded against Plaintiff if the case was brought in bad faith, or if it is frivolous. *Murray v. Playmaker Servs., L.L.C.*, 548 F. Supp. 2d 1378, 1381 (S.D. Fla. 2008). It is clear from the Honorable Judge Williams questions to the Plaintiff in the middle of trial and the ultimate Directed Verdict in favor of the Defendants, that the Plaintiff had no way

to prove that the FLSA applied to this case. [D.E. 78]. At trial, Plaintiff failed to produce any evidence that showed coverage existed under the FLSA subjecting the Defendants to the FLSA's overtime provisions. By continuing trial after Plaintiff had failed to present evidence showing Plaintiff met the requisite threshold for coverage under the FLSA.

1. **The Eleventh Circuit's Standards for Assessing Attorney's Fees**

In its seminal opinion, *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Supreme Court reiterated the importance of objective criteria in determining the lodestar. A specific explanation for all aspects of a fee determination must be given because without same, "adequate appellate review is not feasible, a without such review, widely disparate awards may be made, and awards may be influenced (or at least may appear to be influenced) by a judge's subjective opinion or the importance of the case." *Id*. The Court reiterated that "in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community," not a subjective comparison to unidentified other attorneys. *Id*. "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id*.

The objective nature of the lodestar "cabins the discretion of trial judges, permits meaningful review, and produces predictable results." *Id*. The Court found that the point of the lodestar is to "measure the attorneys' true market value." *Id*. The Court held that "insofar as the District Court relied on a comparison of the performance of counsel in unnamed prior cases, the District Court did not employ a methodology that permitted meaningful appellate review" and that when lodestar determinations are based on "an impressionistic basis, a major purpose of the lodestar method—providing an objective and reviewable basis for fees—is undermined." *Id*.

It is appropriate for a court to base attorneys' fee award on current hourly rates, rather than historical rates, because such an approach takes into account that the attorney was not paid for the work at the time it was performed and also accounts for inflation. *McKenzie v. Cooper, Levins & Patsko, Inc.*, 990 F.2d 1183. 1186 (11th Cir. 1993). Further, what a lawyer charges his fee-paying clients "is powerful, and perhaps the best, evidence of his market rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000); *Tire Kingdon, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336-37 (11th Cir. 2001) (holding that the agree upon billing rate is a strong indication of a reasonable rate but affirming the award of an hourly rate that exceeded that agreed upon billing rate because "the agreed-upon fee rate does not necessarily act as a cap or ceiling in determining the reasonable hourly rate").

This firm's rate is $275 per hour for Aymee Rosquette and Ricardo M. and Nina Tirafa is billed at $375 per hours. *see, CC-Aventure, Inc. v. Weitz Co.*, 2008 WL 276057 (S.D. Fla. 2007) (holding that a 1-year associate could recover $200.00 per hour); *Parrot, Inc. v. Nicestuff Distributing Int'l., Inc.*, 2010 WL 680948 (S.D. Fla. 2010) (finding that the hourly rate of $290.00 per hour for a fourth-year associate fell well within the appropriate rate); *Global Finance, LLC v. Pay Pro Card Corp.*, 2008 WL 4663900, *2-3 (M.D. Fla. 2008) (finding a $170.00 to $190.00 per hour rate for a paralegal to be reasonable).

The Eleventh Circuit's current standards for measuring attorney's fees is set out in *Norman v. Housing Auth. Of the City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988) (*en banc*), wherein the court surveyed the fee-award jurisprudence of both the Supreme Court and the Eleventh Circuit, and reiterated that a fee award should be based upon a multiplication of a reasonable hourly rate (that is, "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation"), *id.* at

1299, by the number of "reasonable hours" billed, *id.* at 1301, which equals the "lodestar," and can be increased or decreased for the results obtained, the quality of representation, and for any delay in payment. *Id.* at 1302. Put another way:

(reasonable hourly rate) x (reasonable hours billed) = lodestar

The lodestar can then be adjusted. The next four subsections discuss: 1) the reasonable hourly rate; 2) assessing the hours billed; 3) the lodestar; and 4) adjusting the lodestar, in turn.

Defendants signed a partial contingency, hourly retainer with the Corona Law Firm with the rate of between $250-$500 per hour, depending on the skill and experience of the attorney.

### 2. <u>Establishing A Reasonable Hourly Rate</u>

The "going rate" in the legal community is the most critical factor in determining a reasonable fee. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990). The pertinent "legal community" used to base an applicable hourly rate is the city where the plaintiff's attorney has his office, not where the case was tried. *Brooks v. Georgia State Bd. Of Elections*, 997 F.2d 857, 868-69 (11th Cir. 1993). The attorney seeking fees bears the burden of producing satisfactory evidence that the requested rate is in line with the going rate. *Norman*, 836 F.2d at 1299. Satisfactory evidence is more than the affidavit of the plaintiff's attorney, and such evidence should pertain to rates actually billed and paid in similar suits. *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* The weight to be given to opinion evidence is affected by the detail contained in the testimony on matters such as similarly of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Id.*

Moreover, another important concept to the determination of an attorney's worth is an assessment of the attorney's skill. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718

(5th Cir. 1974). This criterion is addressed to the trial judge's assessment of the attorney based on his observation of "the attorney's work product, his preparation, and general ability before the court." *Id.* In making this assessment, the district court is to apply its expertise gained from the judge's career both as lawyer and as judge. *Id.* This criterion asks, initially, whether counsel was competent and experienced to do the job assigned, and thereby determining whether he or she is deserving of the going commercial rate for lawyers engaged in litigation in federal court.

As it is for the jury to remember what the testimony presented was, it is for the district court to remember the performance of counsel. As stated by the Eleventh Circuit:

> Throughout, and particularly if litigation is begun, the word "skill" incorporates the notions of organization and efficiency. An attorney of great skill organizes his *1301 thoughts, his work, and his presentation in a logical and orderly way without lost motion or false starts so that each move builds upon the last to the achievement of the goal. Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.
>
> The underpinning for these facets of legal skill is knowledge, knowledge of trial practice and knowledge of the substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.
>
> The final attribute of legal skill is perhaps the one the general public thinks of first — persuasiveness. Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasion. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

*Norman*, 836 F.2d at 1300-01.

In this case, Defendants' counsel exhibited outstanding skill, which is apparent from the fact that this Court entered a Directed Verdict in Defendants' favor. Defendants' counsel

entered an appearance on August 10, 2015 and immediately began preparation for trial held just 14 days later. This included various motions prepared and filed by Defendants' counsel in that short period of time, pretrial stipulations, and jury instructions. [D.E. 60, 62, 63]. The level of skill and experience possessed by Defendants' counsel allowed for such efficient and effective preparation for trial and resulted in a judgment in Defendants' favor just 16 days after counsel's first appearance. [D.E. 26]. The Plaintiff's vigorously prosecuted this matter through trial, which caused the expenditure of fees.

### 3. Assessing a Reasonable Number of Hours

The prevailing party need only submit evidence indicating what the hours worked were. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Supreme Court has stated the following with respect to the assessment of whether the number of hours submitted is reasonable:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Id.* at 435. While this language applies to plaintiffs, it should also apply to defendants, and in this case, the Defendants were successful against the Plaintiffs with respect to all causes of action brought by the Plaintiffs, thus, all of defense counsel's fees should be recoverable. *Id.* at 434-35. The Eleventh Circuit has agreed with this rationale. *Norman*, 836 F.2d at 1302.

Attached documentation in the form of Timesheets in support ( Exhibit "A"), should be more than enough evidence as to defense counsel's reasonable hours worked. Defense counsel submits that the number of hours is reasonable, particularly given the time constraint before trial. The Plaintiff's main theory of this case was that the Defendants violated the Fair Labor Standards Act for overtime, and that there was FLSA coverage pursuant to individual coverage. The Plaintiff knew going in to trial that they did not have any evidence to establish coverage

pursuant to the FLSA, yet still chose to waste judicial administration in litigating its baseless claim and therefore, defense counsel is entitled to their entire fee, as they prevailed.

Finally, it is well settled that expended litigating attorneys' fees is fully compensable. *Thompson v. Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1244-46 (11th Cir. 2003) (reversing district court's decision to deduct all attorney time attributed to efforts to recover attorney's fees as abuse of discretion).

4. **The Lodestar**

The lodestar for all attorneys in this case through the end of the trial[1] is:

| Ricardo M. Corona | 53.6 | $275 | $14,740.00 |
| Aymee Rosquette | 4.7 | $275 | $1,292.50 |
| Nina Tirafa | 20 | $375 | $7500.00 |
| TOTAL | | | $23,532.50 |

5. **Adjusting the Lodestar**

Having determined the lodestar by multiplying the reasonable hourly rate by a reasonable number of hours worked, the Court may then adjust the lodestar, as discussed above, upward or downward, to reflect a number of different factors, including, 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of employment by the attorney due to the acceptance of this case; 5) time limitations by the client or the circumstances; and 6) the amount involved and the results obtained. *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331, *10 (S.D. Fla. 2002)

---

[1] This amount does not include the time expended in drafting and revising this motion and the time expended by Senior Associate and Founder Ricardo R. Corona, who was actively participating in the preparation and trying of this case at trial.

(citing *Kay v. Apfel*, 176 F.3d 1322, 1327); *Norman*, 836 F.2d at 1302. However, in this case, the Defendants do not seek an increase in the lodestar.

6. **Interest on the Fees**

Defendants are entitled to interest on the attorney's fees and costs ultimately awarded in this matter from September 14, 2015, the date of entry of this Court's Final Order. *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994) (relying on *Georgia Ass'n of Retarded Citizens* in holding that "interest shall accrue on Paine Webber's taxable costs from the date the court entered final judgment in favor of Paine Webber on the merits of BankAtlantic's action, November 24, 1989" –BankAtlantic asserted that the cost interest should run from July 3, 1991, the day the district court adopted the magistrate's report and recommendation as to costs); *Gerogia Ass'n of Retarded Citizens v. McDaniel*, 885 F.3d 794, 799 (11th Cir. 1988); *Chiever v. R.J. Schor, Inc.*, 2008 WL 4097795 (S.D. Fla. 2008); *Lane v. Capital Acquisitions Management and Co.*, 554 F. Supp. 2d 1345, 1355 (S.D. Fla. 2008) and *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2901440 (S.D. Fla. 2008). See also *Jenkins by Agyei v. Missouri*, 931 F.2d 1273 (8th Cir. 1991); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (interest awarded on fees from date of original judgment); and *Finkelstein v. Bergua*, 804 F. Supp. 1235, 1240 (N.D. Cal. 1992). Accordingly, Defendants request that this Court Order that Defendants are entitled to interest accrued on Defendants' attorneys' fees since September 14, 2015, the date of this Court's Final Order.

## CONCLUSION

Based on the foregoing, Defendants and their counsel respectfully request that this Honorable Court award attorney's fees of $23,532.50, plus additional fees for the drafting and litigating this motion.

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Motion for Attorneys Fees and the facts stated in it are true to the best of my knowledge and belief

/s/ Ricardo M. Corona

Ricardo M. Corona Esq.

## CERTIFICATE OF CONFERRAL

Defendant has attempted to confer with Opposing Counsel via email on September 23, 2015, September 24, 2015 and September 28, 2015 (See attached Exhibit "A"). Plaintiffs have failed to respond to the emails and have not stated any specific objection to this motion or to any of the fees herein.

Undersigned counsel certifies, by executing this Motion, that he has fully reviewed the supporting time records and data underlying the incurred attorney work, and that the fees sought in this case are reasonable under the circumstances.

Respectfully submitted this 21st day of October, 2015.

THE CORONA LAW FIRM
3899 NW 7th Street, 2nd Floor
Miami, Florida 33126
Ph: (305)266-1150
Fax: (305)266-1151
Email: Ricky@coronapa.com
2nd Email: Rcorona@coronapa.com

By:/s/ Ricardo Corona
Ricardo Corona, Esq./ Ricardo M. Corona, Esq.
Fla Bar No.: 111333/107684

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served via this Court's CMF/ECF system on August 15, 2015 and was emailed to Plaintiff's counsel.

        THE CORONA LAW FIRM
        3899 NW 7th Street, 2nd Floor
        Miami, Florida 33126
        Ph: (305)266-1150
        Fax: (305)266-1151
        Email: Ricky@coronapa.com
        2nd Email: Rcorona@coronapa.com

        By:/s/ Ricardo Corona
        Ricardo Corona, Esq./ Ricardo M. Corona, Esq.
            Fla Bar No.: 111333/107684